IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| PHOENIX BRANDS LLC, *et al.*,[1] | ) | Case No. 16-11242 (___) |
| | ) | |
| Debtors. | ) | (Joint Administration Requested) |
| | ) | |
| | ) | |

## MOTION FOR AN ORDER AUTHORIZING THE DEBTORS TO PAY PREPETITION EMPLOYEE WAGES, BENEFITS, AND RELATED ITEMS

The above-captioned debtors and debtors in possession (collectively, the "Debtors") move the Court for the entry of an order pursuant to sections 105(a), 363, 507(a)(4), 507(a)(5), 541(b)(7), and 541(d) of the Bankruptcy Code (i) authorizing them to pay: (a) prepetition wages, salaries, overtime pay, bonuses, sick pay, vacation pay, and other accrued compensation (collectively, the "Prepetition Compensation"); (b) unreimbursed or unpaid, as applicable, prepetition business expenses (collectively, the "Prepetition Business Expenses"); (c) Prepetition Deductions (as such term is defined below); (d) prepetition contributions to, and benefits under, employee benefit plans (collectively, the "Prepetition Benefits"); (e) the Supplemental Workforce Obligations (as defined below); and (f) all costs and expenses incident to the foregoing payments and contributions, including payroll-related taxes, and related processing and administration costs (the "Prepetition Processing Costs"); and (ii) granting certain related relief. In support of this motion, the Debtors respectfully represent as follows:

---

[1] The Debtors, together with the last four digits of each Debtor's tax identification number, are: Phoenix Brands LLC, (4609), Phoenix Brands Parent LLC, (8729), Phoenix North LLC, (no EIN), and Phoenix Brands Canada ULC (a Nova Scotia Company). The address of each of the Debtors is 1 Landmark Square, Suite 1810, Stamford, CT 06901, except Phoenix Brands Canada ULC, which is Box 50, 1 First Canadian Place, Toronto, Ontario, Canada M5X 1B8.

## Background

1.     On the date hereof (the "Petition Date"), each of the Debtors commenced a case by filing a voluntary petition for relief under chapter 11 of the Bankruptcy Code.[2] The Debtors are continuing in possession of their properties and are managing their businesses, as debtors in possession, pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

2.     The Debtors source, manufacture, and distribute laundry detergent and fabric care products throughout North America, selling wholesale to regional and national retailers located within the United States and Canada. The Debtors do not have any direct to consumer retail program. The Debtors brands are Rit dye, Final Touch fabric softener, laundry detergent and fabric care brands: Fab, Dynamo, Ajax Laundry Detergent, Fresh Start, Cold Power, Arctic Power, and ABC (the "Brands"). These chapter 11 cases were filed, in part, to effect the sale of the Brands.

3.     The Debtors employ a total of 43 employees, including 26 full time non-union employees and 17 full-time union employees.[3] The non-union employees are paid twice monthly through Insperity, Inc., with payments occurring on the 15th and last days of each month. The union employees are paid every Friday on a weekly basis through ADP, LLC ("ADP"). Employees enjoy benefits including medical and dental insurance, optical care, basic group life and accidental death and dismemberment insurance, and short term disability insurance. The Debtors also employ five consultants, who are 1099 employees (independent

---

[2] This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue for this matter is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

[3] The agreements between the Debtors and the union employees is set forth in the Agreement between Phoenix Brands LLC and IUE-CWA Local 84302 for the Period Beginning October 1, 2012 and Ending September 30, 2017 (the "CBA Agreement"). The Debtors will continue to comply with the CBA Agreement pending the sales of all or substantially all of their assets.

contractors) and not W-2 employees of the Debtors (collectively, the "Supplemental Workforce").

4.     Additional information regarding the Debtors and these cases, including the Debtors' businesses, corporate structure, financial condition, and the reasons for and objectives of these cases, is set forth in the *Declaration of William Littlefield in Support of First Day Pleadings* (the "First Day Declaration"), filed contemporaneously herewith and fully incorporated herein by reference.

### *Prepetition Compensation and Prepetition Deductions*

5.     As of the Petition Date, the Debtors have approximately 43 full-time hourly and salaried employees. Many of the employees are owed or have accrued various sums for Prepetition Compensation and Prepetition Deductions (as defined below). These amounts were unpaid on the Petition Date because, among other things: (i) the Debtors commenced their chapter 11 cases in the midst of their customary payroll period, as well as in the midst of their regular reimbursement cycle for employee business expenses; (ii) checks previously issued on account of such obligations may not have been presented for payment or may not have cleared the banking system; (iii) amounts related to prepetition services, while accrued in whole or in part, had not yet become due and payable by the Debtors; and (iv) amounts deducted from employee paychecks were not then due to be paid over to the intended recipient or account, including deductions taken from employees' paychecks (a) to make payments on behalf of the employees for or with respect to, among other things, the Debtors' employee benefit programs, and (b) on account of various federal, state, or local income, FICA, Medicare, state disability, workers' compensation, and other taxes for remittance to the appropriate federal, state, or local taxing authority (collectively, the "Prepetition Deductions").

3

6.     The Debtors seek authority to pay all Prepetition Compensation[4] and Prepetition Deductions. The Debtors estimate that, as of the Petition Date, the total amount of Prepetition Compensation is approximately $222,000 (including company contributions and vacation accruals) and the total amount of Prepetition Deductions is approximately $14,000.

***Prepetition Business Expenses***

7.     The Debtors customarily reimburse their employees for a variety of business expenses incurred in the ordinary course of their business, paid directly by the employee and reimbursed upon review and approval by the Debtors. Generally, the Debtors reimburse approximately $18,000 in business expenses on a monthly basis.

8.     The Debtors respectfully request authority to pay all Prepetition Business Expenses in the ordinary course of their business. Though it is difficult for the Debtors to determine the exact amount of Prepetition Business Expenses that are outstanding, because, among other things, employees may not submit reimbursement forms promptly, the Debtors estimate that their obligations for Prepetition Business Expenses as of the Petition Date will not exceed $9,000.

***Prepetition Benefits***

9.     The Prepetition Benefits relate to the Debtors' employee benefit programs, including, for eligible employees: (a) medical, dental, vision, accidental death and dismemberment, and life and disability insurance; (b) flexible reimbursement plans and healthcare reimbursement accounts; and (c) certain retirement plans including a 401(k) retirement plan. For non-union employees, medical, dental, vision, accidental death and

---

[4] Some of the employees may have vacation time which has accrued but has not been used as of the Petition Date. It is the Debtors' intention to allow employees to take vacation in the ordinary course regardless of whether vacation such was earned prepetition or postpetition. Employees who do not elect to take vacation may be paid accrued vacation in the ordinary course.

4

dismemberment, and life, and disability insurance plans are administered through the Insperity benefit plans. The Debtors' union-employee health benefits plan is sponsored by the United Furniture Workers Insurance Fund and is managed by Blue Cross & Blue Shield of Tennessee (collectively with Insperity and any other applicable benefit plan administrators, the "Plan Administrators").

10.    As to both non-union employees and union employees, the health benefits plans are insured by third parties.  Both the Debtors and the employees contribute to the costs associated with these health benefit plans.  On a monthly basis, the Debtors pay approximately $25,000 with respect to union employees, approximately $62,000[5] with respect to non-union employees, and approximately an additional $600 with respect to Canadian employees for all forms of insurance.  The employees' contribution is twenty percent of the premium costs.

11.    The Debtors also make contributions to 401(k) plan for both union employees and non-union employees. On a monthly basis, the Debtors contribute approximately $17,500.

12.    In total the Debtors estimate that, as of the Petition Date, the amount of Prepetition Benefits is approximately $13,000.

*Supplemental Workforce*

13.    In the ordinary course of business, the Debtors utilize the services of the Supplemental Workforce as independent contractors in connection with providing a variety of services for the Debtors including, *inter alia*, human resources, purchasing, and research and development services. Though the members of the Supplemental Workforce fluctuate to meet the

---

[5] Insperity does not break down its fees by category. As such, benefits, taxes and their fees to provide these services are included in this number.

Debtors' business needs, as of the Petition Date, the Supplemental Workforce consists of five individuals.

14.    The Debtors do not pay wages, withhold taxes, or provide benefits for the Supplemental Workforce. Instead, the Debtors make payments to each independent contractor. The Debtors remit payments to each of the independent contractors as they receive invoices. As of the Petition Date, the Debtors estimate that $16,000 has accrued in respect of the prepetition services of these independent contractors (the "Supplemental Workforce Obligations").

***Costs and Expenses Incident to the Foregoing***

15.    The Prepetition Processing Costs include processing costs, the employer portion of payroll-related taxes, and accrued but unpaid prepetition charges for administration of the Prepetition Benefits, such as payments owed to the Plan Administrators, or ADP. The Debtors estimate that the aggregate amount of Prepetition Processing Costs accrued but unpaid, as of the Petition Date, is no greater than $1,600.

### Basis for Relief Requested

16.    The payment of the Prepetition Compensation, the Prepetition Business Expenses, the Prepetition Deductions, the Prepetition Benefits, the Supplemental Workforce Obligations, and the Prepetition Processing Costs is warranted under sections 105(a), 363, 507(a)(4), 507(a)(5), 541(b)(7), and 541(d) of the Bankruptcy Code and case law in this District and elsewhere.

***Employee Wages and Related Costs Are Entitled***
***To Priority Status under the Bankruptcy Code***

17.    Pursuant to section 507(a)(4) of the Bankruptcy Code, employees are granted a priority claim for:

> allowed unsecured claims, but only to the extent of $12,850 for
> each individual or corporation, as the case may be, earned within

> 180 days before the date of the filing of the petition or the date of
> the cessation of the debtor's business, whichever occurs first, for
> —
>
> > (A)    wages, salaries, or commissions, including vacation, severance,
> > and sick leave pay earned by an individual.

11 U.S.C. § 507(a)(4). Likewise, pursuant to section 507(a)(5) of the Bankruptcy Code,

employees are granted a priority claim for:

> allowed unsecured claims for contributions to an employee benefit
> plan —
>
> > (A)    arising from services rendered within 180 days before the date of
> > the filing of the petition or the date of the cessation of the debtor's business,
> > whichever occurs first; but only
> >
> > (B)    for each such plan, to the extent of —
> >
> > > (i)    the number of employees covered by each such plan
> > > multiplied by $12,850; less
> > >
> > > (ii)    the aggregate amount paid to such employees under
> > > paragraph (4) of this subsection, plus the aggregate amount paid by the
> > > estate on behalf of such employees to any other employee benefit plan.

11 U.S.C. § 507(a)(5).

18.    In addition, the costs of administering employee benefits programs are

also entitled to priority treatment under section 507(a)(5) of the Bankruptcy Code. *Allegheny*

*Int'l, Inc. v. Metro. Life Ins. Co.*, 145 B.R. 820 (W.D. Pa. 1992). In *Allegheny*, the court ruled

that the prepetition claims of a medical benefits plan administrator for, among other things, fees

charged for performing administrative, actuarial, and claims services in connection with the

medical benefits plans of a chapter 11 debtor were entitled to priority under section 507(a)(5) of

the Bankruptcy Code. The court stated that "[i]t would be useless to prioritize expenses for

contributions to an employee benefit plan and not prioritize the expenses necessary to administer

those plans." *Id.* at 822–23.

19.    The Debtors believe that the amount of Prepetition Compensation owing to or on account of nearly all of its current employees will not exceed the sum of $12,850 per employee allowable as a priority claim under sections 507(a)(4) and 507(a)(5) of the Bankruptcy Code. The Debtors believe that the Prepetition Processing Costs are entitled to priority under section 507(a)(5) of the Bankruptcy Code.

### *Funds Held in Trust Are Not Available for General Distribution to Creditors*

20.    Section 541(d) of the Bankruptcy Code provides that "property in which the debtor holds, as of the commencement of the case, only legal title and not an equitable interest" becomes property of a debtor's estate only to the extent of the debtor's legal title therein. 11 U.S.C. § 541(d). It is well established in this District that "property a debtor holds in trust for another is not property of the estate" within the meaning of section 541 of the Bankruptcy Code. *See Golden v. The Guardian (In re Lenox Healthcare, Inc.)*, 343 B.R. 96, 100 (Bankr. D. Del. 2006); *see also In re Columbia Gas Sys., Inc.*, 997 F.2d 1039, 1059 (3d Cir. 1993) (concluding that property that a debtor holds in trust—either express or constructive—for another does not become property of the estate when the debtor files for bankruptcy; stating that "Congress clearly intended the exclusion created by section 541(d) to include not only funds held in express trust, but also funds held in constructive trust."); *EBS Pension L.L.C. v. Edison Bros. Stores, Inc. (In re Edison Bros., Inc.)*, 243 B.R. 231, (Bankr. D. Del. 2000) (same).

21.    More specifically, it is well established under section 541(d) of the Bankruptcy Code that taxes collected on behalf of taxing authorities are not property of the estate. *See Begier v. IRS*, 496 U.S. 53, 59 (1990) (holding that taxes such as excise taxes, FICA taxes, and withholding taxes are property held by the debtor in trust for another and, as such, do not constitute property of the estate); *see also, In re Calabrese*, 689 F.3d 312, 321 (3d Cir. 2012) (finding that third-party sales taxes collected by a retailer "resemble trust fund taxes" and "never

8

become property of the estate" but "are merely held by the debtor on behalf of the party that owes the tax"); *Old Republic Nat'l Title Ins. Co. v. Tyler (In re Dameron)*, 155 F.3d 718, 721 (4th Cir. 1998) (holding that deposits subject to an express trust are excluded from the bankruptcy estate); *City of Farrell v. Sharon Steel Corp. (In re Sharon Steel Corp.)*, 41 F.3d 92, 98-103 (3d Cir. 1994) (finding that funds withheld from employees' paychecks may be subject to a trust, and thus are not property of a debtor's estate, even where such funds were commingled with the debtor's other property). Accordingly, such funds are not available for general distribution to a debtor's creditors.

22.    Certain of the Prepetition Deductions are held in trust for the benefit of the appropriate federal, state, or local taxing authorities or for, among others, the Debtors' employees themselves. Thus, the Prepetition Deductions likely are not property of the Debtors' estates within the meaning of section 541 of the Bankruptcy Code. As a result, the remittance of the Prepetition Deductions is warranted because it will not diminish creditor recoveries.

23.    Further, many federal, state, and local taxing authorities impose personal liability on the officers and directors of entities responsible for collecting taxes from employees to the extent any such taxes are collected but not remitted. Accordingly, if these amounts remain unpaid, there is a risk that the Debtors' officers and directors may be subject to lawsuits on account of any such nonpayment during the pendency of these chapter 11 cases. Such lawsuits would constitute a significant distraction for officers and directors at a time when they should be focused on the Debtors' bankruptcy-related efforts. To avoid the serious disruption of the Debtors' bankruptcy-related efforts that could result from the nonpayment of any withholding taxes, the Debtors seek authority to remit all Prepetition Deductions collected on behalf of the

employees to the applicable taxing authorities to the extent that they have not already been remitted.

***Certain Prepetition Deductions and Contributions for***
***ERISA Plans Are Not Property of the Estate***

24.    In addition to the general exclusion of certain property from a debtor's estate under section 541(d) of the Bankruptcy Code, section 541(b)(7) of the Bankruptcy Code specifically provides that property of the estate does not include amounts withheld by an employer from wages of an employee, or amounts received by an employer from employees, for payment as contributions to an employee benefit plan that is subject to title I of the Employee Retirement Income Security Act of 1974 ("ERISA"). Amounts withheld or collected from employees on account of certain Prepetition Benefits, such as retirement accounts, medical, life, disability, and other insurance, or other benefits that are subject to title I of ERISA and thus satisfy the standards of section 541(b)(7) of the Bankruptcy Code, are not property of the Debtors' estates and not available for distribution to the Debtors' creditors. As such, the remittance of amounts constituting Prepetition Benefits that do not constitute property of the Debtors' estates will not adversely affect the Debtors' creditors.

***The Doctrine of Necessity Provides a Further Basis for Granting the Requested Relief***

25.    Section 363(b)(1) of the Bankruptcy Code provides: "The trustee, after notice and a hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). Section 105(a) of the Bankruptcy Code provides:

> The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent the abuse of process.

10

11 U.S.C. § 105(a).

26.     Courts have repeatedly recognized "the existence of the judicial power to authorize a debtor . . . to pay prepetition claims where such payment is essential to the continued operations of the debtor." *In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 176 (Bankr. S.D.N.Y. 1989); *see also In re Columbia Gas Sys., Inc.*, 171 B.R. 189, 191–92 (Bankr. D. Del. 1994) (finding that a debtor is entitled to pay certain prepetition creditors upon a showing that the payment is "essential to the continued operation of the business") (citations omitted). The United States Supreme Court first articulated the equitable common law principle commonly referred to as the "doctrine of necessity" over 125 years ago in *Miltenberger v. Logansport, C. & S.W.R. Co.*, 106 U.S. 286, 1 S.Ct. 140, 27 L.Ed. 117 (1882). "The Supreme Court, the Third Circuit, and the District of Delaware all recognize the court's power to authorize payment of pre-petition claims when such payment is necessary for the debtor's survival during chapter 11." *In re Just for Feet, Inc.*, 242 B.R. 821, 825 (D. Del. 1999).

27.     Under the doctrine of necessity, a bankruptcy court may exercise its equitable power to authorize a debtor to pay prepetition claims, even though such payment is not explicitly authorized under the Bankruptcy Code. *See In re Columbia Gas Sys., Inc.*, 136 B.R. 930, 939 (Bankr. D. Del. 1992) (*citing In re Lehigh & New England Rwy. Co.*, 657 F.2d 570, 581 (3d Cir. 1981) (recognizing that "if payment of a prepetition claim 'is essential to the continued operation of [the debtor], payment may be authorized.'")).

28.     The bankruptcy court's exercise of its authority under the "doctrine of necessity" is appropriate to carry out specific statutory provisions of chapter 11, specifically sections 1107(a), 1108, and 363(b)(1) of the Bankruptcy Code, which collectively authorize a debtor in possession to maintain and operate the debtor's business and use estate property outside

of the ordinary course of business. Indeed, a debtor in possession operating a business under section 1108 of the Bankruptcy Code has a duty to protect and preserve the value of its business, and prepetition claims may be paid if necessary to perform the debtor's duty. *See In re CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002) ("There are occasions when this duty can only be fulfilled by the preplan satisfaction of a prepetition claim.").

29.     This motion satisfies the foregoing criteria, as the relief sought herein plainly is essential to the continued operations of the Debtors. Paying Prepetition Compensation and Prepetition Benefits and reimbursing Prepetition Business Expenses helps maintain the goodwill of the Debtors' employees and ensures the uninterrupted availability of their services, and will protect the going concern value of the estates and maximize the value ultimately available to creditors by (i) assisting the Debtors in maintaining the necessary "business as usual" atmosphere, and (ii) preserving the Debtors' relationships with customers and vendors.

30.     It is likewise critical that the Debtors maintain the services of the Supplemental Workforce who provide a variety of important services for the Debtors. Any delay in payments to the independent contractors could cause the Debtors to lose the benefit of the independent contractors' services, which would significantly disrupt and impair certain aspect of the Debtors' operations.

31.     Furthermore, any harm resulting from the Debtors' failure to obtain the relief requested herein would not be limited to the Debtors' estates. Because the amounts represented by Prepetition Compensation and Prepetition Benefits are needed to enable the Debtors' employees to meet their own personal obligations, they would suffer undue hardship and, in many instances, serious financial difficulties if the relief requested herein is not granted.

12

32.    In light of the foregoing, the Debtors respectfully submit that the payment of the employee-related obligations as requested herein is (i) in the best interests of the Debtors, their estates, and their creditors, and (ii) necessary to prevent immediate and irreparable harm to the Debtors, their estates, and their creditors.

33.    This Court has routinely approved the payment of prepetition claims of employee wages, salaries, expenses and benefits in various chapter 11 cases. *See, e.g.*, *In re Emerald Oil, Inc.*, Case No. 16-10704 (KG) (Mar. 24, 2016); *In re Horsehead Holding Corp.*, Case No. 16-10287 (CSS) (Bankr. D. Del. Feb. 3, 2016); *In re Malibu Lighting Corp.*, Case No. 15-12080 (KG) (Bankr. D. Del. Oct. 9, 2015); *In re Deb Stores Holding LLC,* Case No. 14-12676 (MFW) (Bankr. D. Del. December 5, 2014); *In re Dolan Co.*, Case No. 14-10614 (BLS) (Bankr. D. Del. Apr. 15, 2014); *In re Ablest, Inc., Case No.*, Case No. 14-10717 (KJC) (Bankr. D. Del. Apr. 2, 2014).

### Request for Authority for Banks to Honor and Pay Checks Issued to Pay Prepetition Compensation, Supplemental Workforce Obligations, Prepetition Business Expenses, Prepetition Deductions, Prepetition Benefits, and Prepetition Processing Costs

34.    In addition, by this motion, the Debtors request that all applicable banks and other financial institutions (collectively, the "Banks") be authorized, when requested by the Debtors, to receive, process, honor, and pay any and all checks presented for payment of, and to honor all fund transfer requests made by the Debtors related to Prepetition Compensation, Supplemental Workforce Obligations, Prepetition Business Expenses, Prepetition Benefits, Prepetition Deductions, and Prepetition Processing Costs, regardless of whether such checks were presented or fund transfer requests were submitted prior to or after the Petition Date, provided that sufficient funds are available in the applicable accounts to make the payments. The Debtors represent that these checks are drawn on identifiable payroll and disbursement accounts and can be readily identified as relating directly to the authorized payment of Prepetition

13

Compensation, Supplemental Workforce Obligations, Prepetition Business Expenses, Prepetition

Benefits, Prepetition Deductions, and/or Prepetition Processing Costs. Accordingly, the Debtors

believe that checks will not be honored inadvertently.

35.    Nothing contained herein is intended or shall be construed as: (i) an

admission as to the validity of any claim against the Debtors; (ii) a waiver of the Debtors' rights

to dispute any claim on any grounds; (iii) a promise to pay any claim; (iv) an implication or

admission that any particular claim against the Debtors would constitute a Supplemental

Workforce Obligation or a claim for Prepetition Compensation, Prepetition Business Expenses,

Prepetition Deductions, Prepetition Benefits, or Prepetition Processing Costs; or (v) the

assumption of any contract.

### Requests for Immediate Relief & Waiver of Stay

36.    Pursuant to Rules 6003(b) and 6004(h) of the Federal Rules of Bankruptcy

Procedure (the "Bankruptcy Rules"), the Debtors seek (i) immediate entry of an order granting

the relief sought herein, and (ii) a waiver of any stay of the effectiveness of such an order.

Bankruptcy Rule 6003(b) provides, in relevant part, that "[e]xcept to the extent that relief is

necessary to avoid immediate and irreparable harm, the court shall not, within 21 days after the

filing of the petition, grant relief regarding . . . a motion to pay all or part of a claim that arose

before the filing of the petition." Accordingly, where the failure to grant any such requested

relief would result in immediate and irreparable harm to the Debtors' estates, the Court may

allow the Debtors to pay all or part of a claim that arose before the Petition Date prior to the

twenty-first day following the Petition Date. Bankruptcy Rule 6004(h) provides that "[a]n order

authorizing the use, sale, or lease of property other than cash collateral is stayed until the

expiration of 14 days after entry of the order, unless the court orders otherwise."

14

37.     As set forth above, the payment of the Prepetition Compensation, the Supplemental Workforce Obligations, the Prepetition Business Expenses, Prepetition Deductions, Prepetition Benefits, and Prepetition Processing Costs is necessary to prevent immediate and irreparable damage to the Debtors' (i) operations (and customer confidence therein), and (ii) going-concern value that would result from a collapse of employee morale and from a loss in services of the Debtors' employees and independent contractors. Accordingly, the Debtors submit that ample cause exists to justify (i) the immediate entry of an order granting the relief sought herein, and (ii) a waiver of the fourteen-day stay imposed by Bankruptcy Rule 6004(h), to the extent that it applies.

### Consent to Jurisdiction

38.     Pursuant to Local Rule 9013–1(f), the Debtors consent to the entry of a final judgment or order with respect to this motion if it is determined that the Court would lack Article III jurisdiction to enter such final order or judgment absent consent of the parties.

### Notice

39.     Notice of this motion will be provided to: (a) the Office of the United States Trustee for the District of Delaware; (b) Madison Capital Funding, Agent for the Debtors' senior credit facility; (c) Fifth Street Asset Management Inc., a holder of the Debtors' senior debt and of the Debtors' subordinated debt; (d) the Debtors' largest unsecured creditors on a consolidated basis, as identified in their chapter 11 petitions; and (e) any party filing a notice of appearance and request for service of papers. Notice of this motion and any order entered hereon will be served in accordance with Local Rule 9013–1(m). In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is necessary.

DOCS_DE:207328.1 70787/001

**No Prior Request**

40.     No prior request for the relief sought herein has been made to this Court or any other court.

WHEREFORE, the Debtors respectfully request that the Court enter an order substantially in the form attached hereto as Exhibit A, granting: (i) the relief requested herein; and (ii) such other and further relief to the Debtors as the Court may deem proper.

Respectfully submitted,

Dated:    May 19, 2016                    PACHULSKI STANG ZIEHL & JONES LLP

                                          Laura Davis Jones (DE Bar No. 2436)
                                          Joseph M. Mulvihill (DE Bar No. 6061)
                                          919 N. Market Street, 17th Floor
                                          P.O. Box 8705
                                          Wilmington, DE 19899-8705 (Courier 19801)
                                          Telephone: (302) 652-4100
                                          Facsimile: (302) 652-4400
                                          Email: ljones@pszjlaw.com
                                                 jmulvihill@pszjlaw.com

                                          and-

                                          Joseph T. Moldovan (*Pro Hac Vice* pending)
                                          Robert K. Dakis (*Pro Hac Vice* pending)
                                          MORRISON COHEN LLP
                                          909 Third Avenue
                                          New York, NY 10022
                                          Telephone: (212) 735-8600
                                          Facsimile:  (212) 735-8708
                                          email: bankruptcy@morrisoncohen.com
                                                 rdakis@morrisoncohen.com

                                          *Proposed Co-Counsel For the Debtors And
                                          Debtors In Possession*