IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| PHOENIX BRANDS LLC, *et al.*,[1] | ) | Case No. 16-11242 (BLS) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| | ) | **Docket Ref. No. 14** |

**INTERIM ORDER AUTHORIZING DEBTORS TO: (A) USE CASH COLLATERAL ON AN EMERGENCY BASIS PENDING A FINAL HEARING; (B) INCUR POSTPETITION DEBT ON AN EMERGENCY BASIS PENDING A FINAL HEARING; AND (C) GRANT ADEQUATE PROTECTION AND PROVIDE SECURITY AND OTHER RELIEF TO MADISON CAPITAL FUNDING LLC, AS AGENT, AND THE LENDERS**

This matter came before this Court on the motion ("Motion") of Phoenix Brands LLC, a Delaware limited liability company, and the other Debtors requesting that this Court enter an order authorizing Debtors to (a) use certain Cash Collateral on an emergency basis pending a Final Hearing; (b) incur certain Postpetition Debt on an emergency basis pending a Final Hearing; and (c) grant adequate protection and provide security and other relief to Madison Capital Funding LLC, in its capacity as administrative agent ("Prepetition Agent") to the lenders party from time to time to the Credit Agreement ("Prepetition Lenders"), and Madison Capital Funding LLC, in its capacity as administrative agent ("Postpetition Agent"; together Prepetition Agent, "Agents") to the lenders party from time to time to the Postpetition Loan Agreement ("Postpetition Lenders"; collectively with Prepetition Lenders, "Lenders"). Capitalized terms used but not otherwise defined herein have the meanings assigned to them in Exhibit 1 attached hereto.

This Order constitutes findings of fact and conclusions of law under Fed. R. Bankr. P. 7052 and will take effect and be fully enforceable as of the Petition Date.

---

[1] The Debtors, together with the last four digits of each Debtor's tax identification number, are: Phoenix Brands LLC, (4609), Phoenix Brands Parent LLC, (8729), Phoenix North LLC, (no EIN), and Phoenix Brands Canada ULC (a Nova Scotia Company). The address of each of the Debtors is 1 Landmark Square, Suite 1810, Stamford, CT 06901, except Phoenix Brands Canada ULC, which is Box 50, 1 First Canadian Place, Toronto, Ontario, Canada M5X 1B8.

Having examined the Motion, being fully advised of the relevant facts and circumstances surrounding the Motion, and having completed a hearing pursuant to Code §§ 363 and 364 and Fed. R. Bankr. P. 4001(b) and (c), and objections, if any, having been withdrawn, resolved, or overruled by the Court, **THE MOTION IS GRANTED, AND THE COURT HEREBY FINDS THAT:**

A.      On the Petition Date, Debtors filed voluntary petitions for relief under chapter 11 of the Code. Debtors have retained possession of their property and continue to operate their respective businesses as debtors in possession pursuant to Code §§ 1107 and 1108.

B.      The Court has jurisdiction over the Cases and this proceeding under 28 U.S.C. § 1334.  Determination of the Motion constitutes a core proceeding as defined in 28 U.S.C. § 157(b)(2).  Venue over the Motion is proper under 28 U.S.C. § 1409(a).

C.      No Committee has been appointed in these Cases.

D.      Subject to Paragraph 8 of this Order, each Debtor admits, stipulates, and agrees that:

1.      the Prepetition Documents evidence and govern the Prepetition Debt, the Prepetition Liens, and the prepetition financing relationship among Debtors, Prepetition Agent, and Prepetition Lenders;

2.      the Prepetition Debt constitutes the legal, valid, and binding obligation of Debtors, enforceable in accordance with the terms of the Prepetition Documents, all of which are deemed to be reaffirmed by the parties thereto;

3.      as of the Petition Date, Debtors are each liable for the payment and performance of the Prepetition Debt, and the Prepetition Debt is an allowed claim in the amount of not less than $23,704,313, exclusive of accrued and accruing Allowable 506(b) Amounts, and is an allowed secured claim in an amount not less than $23,704,313;

4.      no offsets, defenses, or counterclaims to the Prepetition Debt exist, and no portion of the Prepetition Debt is subject to contest, objection, recoupment, defense, counterclaim, offset, avoidance, recharacterization, subordination, or other claim, cause of action, or challenge of any nature under the Code, applicable non-bankruptcy law, or otherwise;

5. the Prepetition Liens are Priority Liens, subject to Permitted Priority Liens and secure payment of all of the Prepetition Debt;

6. upon the entry of this Order, for purposes of Code §§ 506(c) and 507(b) and Fed. R. Bankr. P. 3012, as of the Petition Date, the value of Prepetition Agent's and Prepetition Lenders' interest in the Prepetition Collateral was not less than $23,704,313; provided, however, that nothing herein shall prejudice Prepetition Agent's and any Prepetition Lender's right to later: (1) assert that their respective interests in the Prepetition Collateral lack adequate protection; and (2) seek a higher valuation of the Prepetition Collateral; and

7. Debtors do not have, and each Debtor hereby releases, and is forever barred from bringing or asserting, any claims, defenses, or setoff rights relating to the Prepetition Documents, the Prepetition Liens, the Prepetition Debt, or otherwise, against Prepetition Agent, Prepetition Lenders, and each of their respective affiliates, shareholders, subsidiaries, divisions, agents, officers, directors, members, managers, employees, representatives, attorneys, advisors, principals, consultants, predecessors in interest, successors, and assigns.

E. Prepetition Agent and Prepetition Lenders have consented to the terms of this Order and are entitled to adequate protection as set forth herein pursuant to Code §§ 361, 362, 363, and 364 for any decrease in the value of their interests in the Prepetition Collateral from and after the Petition Date.

F. Debtors have agreed to remit Cash Collateral to Agents, and Debtors need to incur Postpetition Debt, as provided herein through the conclusion of the Final Hearing in order to prevent immediate and irreparable harm to Debtors' estates and to minimize disruption to, and avoid the termination of, their business operations. Entry of this Order will also enhance the possibility of maximizing the value of Debtors' businesses in connection with an orderly sale or other disposition of the Aggregate Collateral.

G. Debtors are unable to obtain unsecured credit allowable under Code § 503(b)(1) sufficient to finance the operation of their businesses. Except as provided below, Debtors are unable to obtain credit allowable under Code §§ 364(c)(1), (c)(2), or (c)(3) on terms

-3-

more favorable than those offered by Postpetition Agent and Postpetition Lenders. An immediate need exists for the Debtors to obtain Postpetition Debt in order to continue operations and to administer and preserve the value of their estates. The Debtors, as of the Petition Date, do not have sufficient cash resources to finance their ongoing operations and require the availability of working capital from Postpetition Debt, the absence of which would immediately and irreparably harm the Debtors, their estates, and creditors.

H.      The terms of the Postpetition Debt have been negotiated at arm's length, and the Postpetition Debt is being extended in good faith, as that term is used in Code § 364(e).

I.      The terms and conditions of the Postpetition Documents are fair and reasonable, the best available to Debtors under the circumstances, reflect Debtors' exercise of prudent business judgment consistent with its fiduciary duties, and are supported by reasonably equivalent value and consideration.

J.      Under the circumstances of these Cases, this Order is a fair and reasonable response to Debtors' request for Agents' and Lenders' consent to the use of Cash Collateral and the provision of Postpetition Debt, and the entry of this Order is in the best interest of Debtors' estates and their creditors.

K.      The notice provided by Debtors of the Motion, the hearing on the Motion, and the entry of this Order satisfy the requirements of Fed. R. Bankr. P. 2002, 4001(b) and (c), and 9014, and Code §§ 102(1), 363, and 364(c) and (d), and were otherwise sufficient and appropriate under the circumstances.

**WHEREFORE, IT IS HEREBY ORDERED THAT THE MOTION IS GRANTED, AND THAT:**

1.      <u>Authorization to Use Cash Collateral</u>. Debtors are authorized to use Cash Collateral through the Termination Date solely in accordance with the terms of this Order.

2.      <u>Procedure for Debtors' Use of Cash Collateral</u>.

(a)      <u>Delivery of All Cash Collateral to Postpetition Agent</u>. Debtors must deposit all Cash Collateral now or hereafter in their possession or control into the Blocked Account (or otherwise remit such Cash Collateral to Postpetition Agent in a manner satisfactory to Postpetition Agent) promptly upon Debtors' receipt thereof for application in accordance with Paragraph 2(d) of this Order.

-4-

(b)   <u>Account Debtors</u>. Without further order of the Court, Debtors shall, and the Agents may, directly notify in writing all account debtors of existing and future accounts receivable of the Debtors and instruct all such account debtors to make payments directly into the Blocked Account.

(c)   <u>Cash Collateral in Any Agents' or Lenders' Possession</u>.  Agents are authorized to collect upon, convert to cash, and enforce checks, drafts, instruments, and any other forms of payment now or hereafter coming into any Agent's or any Lender's possession or control that constitute Aggregate Collateral or proceeds thereof.

(d)   <u>Application of Cash Collateral</u>.  Except as Agents may otherwise elect, all Cash Collateral now or hereafter in any of a Debtor's, Agent's or Lender's possession or control will be deemed to be remitted to Postpetition Agent, and deemed to be applied, and Agents are authorized to apply all such Cash Collateral as follows:  (1) first, to the payment of Prepetition Debt consisting of Allowable 506(b) Amounts, until paid in full in cash; (2) second, to the payment of all other Prepetition Debt in accordance with the terms of the Prepetition Documents, until $23,704,313 of Prepetition Debt has been paid in full in cash; (3) third, to the payment of Postpetition Debt consisting of Postpetition Charges, until paid in full in cash; (4) fourth, to the payment of all other Postpetition Debt in accordance with the terms of the Postpetition Documents, until paid in full in cash; and (5) fifth, to the payment of any and all remaining Prepetition Debt, if any, until paid in full in cash.  All such applications to Postpetition Debt shall be final and not subject to challenge by any Person, including, without limitation, any Trustee.  All such applications to Prepetition Debt shall be final, subject only to the right of parties in interest to seek a determination in accordance with Paragraph 8 below that such applications resulted in the payment of an unsecured prepetition claim of Prepetition Agent and Prepetition Lenders.  Any amounts that are determined by the Court as a result of any such objection or determination to have been improperly applied to the Prepetition Debt will be deemed to reduce the Postpetition Debt, dollar-for-dollar. For the avoidance of doubt, any Cash Collateral in the possession or control of the Debtors that is applied pursuant to this subsection (d) of Paragraph 2 shall be deemed to be immediately loaned back to Debtors and shall be

-5-

Postpetition Debt, subject to the terms and provisions of this Order, the Budget, and the Postpetition Documents.

(e)     <u>Prohibition Against Use of Cash Collateral</u>.   Unless otherwise consented to by the Agents and Lenders, Debtors may not use, seek to use, or be permitted to use any Cash Collateral for any purpose until the Aggregate Debt is indefeasibly paid in full in cash; <u>provided, however</u>, that Debtors may use Cash Collateral solely as provided for in this Order.

3.     <u>Authorization To Incur Postpetition Debt</u>.

(a)     <u>Postpetition Documents</u>. Debtors are authorized and have agreed to: (1) execute the Postpetition Documents, including, without limitation, all documents that Postpetition Agent and Postpetition Lenders find reasonably necessary or desirable to implement the transactions contemplated by the Postpetition Documents; and (2) perform their obligations under, and comply with, all of the terms and provisions of the Postpetition Documents and this Order. Upon execution and delivery thereof, the Postpetition Documents will constitute valid and binding obligations of Debtors enforceable in accordance with their terms. To the extent that there exists any conflict among the terms of the Motion, the Postpetition Documents, and this Order, this Order will govern and control.

(b)     <u>Permitted Uses of Postpetition Debt</u>.   Debtors are authorized and have agreed to incur Postpetition Debt solely:  (1) in accordance with the terms and provisions of this Order; (2) to the extent required to pay those expenses enumerated in the Budget, including, without limitation, the Carveout and Budgeted TSA Costs (as defined in Paragraph 3(h)), as and when such expenses become due and payable, subject to the Permitted Variance; and (3) to pay Allowable 506(b) Amounts and Postpetition Charges.  If Postpetition Lenders advance monies to Debtors and Debtors use any such monies other than in accordance with the terms and provisions of this Order, then such advances will be considered to be Postpetition Debt for purposes of this Order.

(c)     <u>Refinancing of Certain Outstanding Prepetition Debt Upon Entry of Final Order</u>. Upon entry of the Final Order, Debtors are authorized and have agreed to incur Postpetition Debt under Section 2.1.1 of the Postpetition Loan Agreement to refinance, in full, an

-6-

aggregate amount of the Prepetition Debt equal to $23,704,313 minus the aggregate amount of Cash Collateral that has been applied to the Prepetition Debt in accordance with subsections (1) and (2) of Paragraph 2(d) of this Order as of the date of entry of the Final Order. Such refinancing of Prepetition Debt upon entry of the Final Order will be final, subject only to the right of parties in interest to seek a determination in accordance with Paragraph 8 of this Order that such payment resulted in the payment of an unsecured prepetition claim of Prepetition Agent and Prepetition Lenders. Any amounts that are disgorged in connection with any such objection or determination will be first applied to pay Postpetition Debt consisting of Postpetition Charges and then to all other Postpetition Debt in accordance with subsections (3) and (4) of Paragraph 2(d) of this Order, dollar-for-dollar, until paid in full in cash.

       (d)     <u>Certain Additional Material Terms of Postpetition Debt</u>.

       (i)     <u>Maximum Amount</u>. The maximum principal amount of Postpetition Debt outstanding may not at any time exceed the DIP Commitment.

       (ii)     <u>Interest</u>. The Postpetition Debt will bear interest at a per annum rate equal to the Base Rate (as defined in the Postpetition Loan Agreement) <u>plus</u> 7.75%.

       (iii)     <u>Closing Fee</u>. Debtors will pay to Postpetition Agent, for the benefit of Postpetition Lenders, a closing fee (the "<u>Closing Fee</u>") in an amount equal to $50,000, which Closing Fee will be fully earned, due, and payable as follows: (i) $25,000 payable upon entry of this Order and (ii) $25,000 payable upon entry of the Final Order.

       (iv)     <u>Maturity</u>. The Postpetition Debt will mature and be due and payable in full by Debtors on the Termination Date.

       (v)     <u>Prepetition Documents</u>. Subject to Paragraph 8 of this Order, each Subordination Agreement, Prepetition Third Party Document, and other Prepetition Document will remain in full force and effect notwithstanding the entry of this Order and any subsequent orders amending this Order or otherwise providing for the use of any Cash Collateral consented to by Agents and Lenders pursuant to Code § 363 or additional financing by Agents and Lenders pursuant to Code § 364. Each "Loan Party" (as defined in the Credit Agreement) is and will remain liable for all guaranteed obligations and indebtedness under the "Guarantee and Collateral Agreement" (as defined in the Credit Agreement), including, without limitation, all Postpetition Debt, and any refinancing thereof.

(vi)    <u>Joint and Several Liability of Debtors</u>.    The obligations of each Debtor under this Order are joint and several.

(vii)    <u>Deposit Account Control Agreements</u>.    All deposit account control agreements, including, without limitation, the Control Agreements, in effect as of the Petition Date will remain in full force and effect notwithstanding the entry of this Order and any subsequent orders amending this Order.

(e)    <u>Superpriority Administrative Expense Status; Postpetition Liens</u>. The Postpetition Debt is hereby granted superpriority administrative expense status under Code § 364(c)(1), with priority over all costs and expenses of administration of the Cases that are incurred under any provision of the Code. In addition, Postpetition Agent is hereby granted the Postpetition Liens, for the benefit of itself and Postpetition Lenders, to secure the Postpetition Debt. The Postpetition Liens: (1) are in addition to the Prepetition Liens; (2) under Code §§ 364(c)(2), 364(c)(3), and 364(d), are Priority Liens (subject only to Permitted Priority Liens) without any further action by Debtors or Postpetition Agent, and without the execution, filing, or recordation of any financing statements, security agreements, mortgages, or other documents or instruments; (3) will not be subject to any security interest or lien that is avoided and preserved under Code § 551; (4) will remain in full force and effect notwithstanding any subsequent conversion or dismissal of any Case; (5) will not be subject to Code § 510(c); and (6) upon entry of the Final Order, will not be subject to any landlord's lien, banker's lien, bailee's rights, right of distraint, or levy, security interest, or any other interest that any landlord, bailee, warehousemen, bank, processor, or landlord's mortgagee may have in any or all of the Aggregate Collateral located on such leased premises. Notwithstanding the foregoing, Debtors must execute and deliver to Postpetition Agent such financing statements, mortgages, instruments, and other documents as Postpetition Agent may request from time to time. Further, Prepetition Agent will serve as agent for Postpetition Agent for purposes of perfecting Postpetition Agent's security interest in any Postpetition Collateral that requires perfection by possession or control, including, without limitation, under the Control Agreements, and all Prepetition Third Party Documents will be deemed to be for the benefit of Postpetition Agent and Postpetition Lenders without any further order of Court or action by any Person. Without limiting the foregoing, Postpetition Agent, for itself and Postpetition Lenders, will, and will be deemed to, have a perfected Postpetition Lien on all existing deposit accounts of Debtors and on any new deposit account that

-8-

any Debtor may establish on or after the date hereof without any further action by Debtors or Postpetition Agent.

(f)    Prohibition Against Additional Debt.  Debtors may not incur or seek to incur debt secured by a lien which is equal to, or superior to, the Prepetition Liens or the Postpetition Liens, or which is given superpriority administrative expense status under Code § 364(c)(1), unless, in addition to the satisfaction of all requirements of Code § 364:  (1) Agents have consented to such order; (2) at the time such an order is entered, there is no Postpetition Debt outstanding, and no obligation of Postpetition Lenders to extend Postpetition Debt; or (3) such credit or debt is first used to pay the Aggregate Debt in full in cash.

(g)    Contingent Post-Sale Advances.

(i)    Subject to the terms of this Order, the Postpetition Documents, and Budget, if Debtors realize the Specified Minimum Sale Proceeds in connection with the timely consummation of the Sale Closing, then Postpetition Lenders will provide Postpetition Debt to Debtors, to be used by Debtors for general administrative purposes in accordance with this Order, the Postpetition Documents, and the Budget, in the amount of $300,000 less the amount of any readily available cash proceeds of property of Debtors' estates (other than property subject to an unavoidable lien in favor of Agents or any other creditor claiming a security interest or lien in same) (any such readily available cash proceeds, "Alternative Cash Proceeds").

(ii)    If Debtors satisfy the requirements set forth in subsection (i) above, then Postpetition Lenders will provide additional Postpetition Debt to Debtors (i.e., Postpetition Debt that is in addition to the $300,000 provided for in subsection (i) above), to be used by the Debtors for general administrative purposes, in the corresponding incremental amounts set forth in the table below, in each case, less the amount of any Alternative Cash Proceeds, as applicable, if and to the extent that, as of the applicable date of determination, (1) the net cash proceeds arising out of, and realized by Debtors in connection with, the Sale Closing, plus (2) the amount of any other net cash proceeds of Aggregate Collateral that are from time to time received by Postpetition Agent in accordance with the terms hereof and the Postpetition Documents, plus (3) the amount of any cash interest payments that are from time to time received by the Prepetition Lenders in accordance with Paragraph 4(a) hereof, in each case with respect to (1) through (3)

-9-

above, solely to the extent that all of the Specified Exclusions have been deducted from all such proceeds and payments and such proceeds and payments have been applied on a permanent basis in accordance with Paragraph 2(d) and are not otherwise able to be re-borrowed under the terms of the Postpetition Documents (the sum of all such net cash proceeds and interest payments, "Net Cash Proceeds"), are greater than or equal to $22,250,000, subject to the terms of this Order, the Postpetition Documents, and the Budget; provided, however, that notwithstanding the foregoing, the aggregate amount of all such Postpetition Debt made available to Debtors under this Paragraph 3(g) (including the $300,000 of Postpetition Debt provided for in subsection (i) plus any potential additional Postpetition Debt provided for in this subsection (ii)) will not exceed $825,000 plus any amounts that may be available for use by the Debtors in respect of the Unused Debtor Carveout pursuant to, and as defined in, Paragraph 6(d) hereof:

| Cumulative Amount of Net Cash Proceeds: | Corresponding Incremental Amount of Postpetition Debt Available for Debtors to Borrow Under Postpetition Documents:* |
|---|---|
| $22,250,000 up to, and including, $22,499,999 | plus an additional $35,000 (if applicable) |
| $22,500,000 up to, and including, $22,749,999 | plus an additional $35,000 (if applicable) |
| $22,750,000 up to, and including, $22,999,999 | plus an additional $35,000 (if applicable) |
| $23,000,000 up to, and including, $23,249,999 | plus an additional $235,000 (if applicable) |
| $23,250,000 up to, and including, $23,499,999 | plus an additional $37,000 (if applicable) |
| $23,500,000 up to, and including, $23,749,999 | plus an additional $37,000 (if applicable) |
| $23,750,000 up to, and including, $23,999,999 | plus an additional $37,000 (if applicable) |
| $24,000,000 up to, and including, $24,249,000 | plus an additional $37,000 (if applicable) |
| $24,250,000 or more | plus an additional $37,000 (if applicable) |
| * All such incremental amounts of Postpetition Debt are in each case subject to reduction by the amount of any Alternative Cash Proceeds as of the date of determination. | |

All such Postpetition Debt shall be used by Debtors for general administrative purposes and will be subject to the terms of this Order, the Postpetition Documents, and the Budget.  For the avoidance of doubt, for the purposes of this Paragraph 3(g), the term "general administrative

-10-

purposes" shall include payments scheduled to be made pursuant to any confirmed plan of reorganization or order dismissing these Cases. Any portion of such Postpetition Debt that is not used for general administrative purposes in accordance with the terms hereof shall be repaid in full in cash to the Postpetition Agent, for the benefit of the Postpetition Lenders, on the earlier of (y) the effective date of any plan that is confirmed in any Case or (z) the date on which any Case is first dismissed or converted to a case under chapter 7 of the Code.

(iii)   If Debtors timely consummate the Sale Closing pursuant and subject to the terms of this Order and the Postpetition Documents, but for any reason do not realize the Specified Minimum Sale Proceeds, then Postpetition Lenders will provide Postpetition Debt to Debtors, to be used by Debtors for general administrative purposes in accordance with this Order, the Postpetition Documents, and the Budget, in the amount of $200,000 less the amount of any Alternative Cash Proceeds.  For the avoidance of doubt, the terms of Paragraph 3(g)(ii) will not apply in the event Debtors fail to realize the Specified Minimum Sale Proceeds for any reason.

(iv)   If for any reason Debtors do not timely consummate the Sale Closing pursuant and subject to the terms of this Order and the Postpetition Documents, then the terms of this Paragraph 3(g) are and will be null and void and of no force or effect.

(v)   Notwithstanding anything in this Order to the contrary, any obligation of the Postpetition Lenders to advance any Postpetition Debt to the Debtors under subsections (i), (ii), or (iii) of this Paragraph 3(g) will in each case be conditioned upon, and subject to, (A) the expiration of the Investigation Period, unless the Investigation Period is extended with the written consent of Agents beyond the date on which any such advance of Postpetition Debt under this Paragraph 3(g) may be requested by Debtors in accordance with the terms hereof and the Postpetition Documents (in which case the condition set forth in this subsection (A) will not apply), (B) no Challenge having been initiated under Paragraph 8 hereof, unless any such Challenge is resolved with the written consent of Agents and Lenders prior to the date on which any such advance of Postpetition Debt under this Paragraph 3(g) may be requested by Debtors in accordance with the terms hereof and the Postpetition Documents (in which case the condition set forth in this subsection (B) will be deemed to be satisfied), and (C) the Debtors' providing Postpetition Agent and each Postpetition Lender with a general release in the form set

-11-

forth in Paragraph 21 of this Order in respect of events occurring on or prior to the date on which any such Postpetition Debt may be advanced by the Postpetition Lenders under subsections (i), (ii), or (iii) of this Paragraph 3(g).

(vi)  Postpetition Agent and Postpetition Lenders have, and will retain, the right to fully reserve against the DIP Commitment, including, without limitation, by establishing one or more Reserves under the Postpetition Loan Agreement, in respect of any Postpetition Debt made available to Debtors pursuant to this Paragraph 3(g).

(h)    Budgeted TSA Costs. Effective upon, and subject to, consummation of the Sale Closing, and subject to the terms of this Order, the Postpetition Documents, and Budget, Postpetition Agent and the Postpetition Lenders will provide Postpetition Debt to Debtors for a period of sixty (60) days after the date of the Sale Closing up to, but not exceeding, the amounts set forth in the Budget for such period, to be used by Debtors solely to the extent required to pay any obligations that the Debtors may be required to pay under any Transition Services Agreement during such period as well as related overhead and operational expenses, as and when any such obligations may become due and payable ("Budgeted TSA Costs").

4.    Adequate Protection of Interests of Prepetition Agent and Prepetition Lenders in the Prepetition Collateral and the Prepetition Liens. Prepetition Agent and Prepetition Lenders have consented to the terms of this Order and are entitled to adequate protection as set forth herein and to the extent required under Code §§ 361, 362, 363, or 364 for any decrease in the value of such interests in the Prepetition Collateral from and after the Petition Date on account of the stay, use, sale, lease, license, grant, or other disposition of any Prepetition Collateral.

(a)    Interest Payments to Prepetition Lenders. Debtors will timely make monthly payments of interest to the Prepetition Lenders at the non-default rate as provided in, and in accordance with, Section 2.7 of the Credit Agreement, commencing on the first scheduled payment date occurring after the Petition Date, whether or not included in the Budget.

(b)    Priority of Prepetition Liens; Allowance of Prepetition Agent's and Prepetition Lenders' Claim. Subject to the terms of Paragraph 8 of this Order: (1) the Prepetition

Liens constitute Priority Liens, subject only to the Postpetition Liens and Permitted Priority Liens; (2) the Prepetition Debt constitutes the legal, valid, and binding obligation of each Debtor, enforceable in accordance with the terms of the Prepetition Documents; (3) no offsets, defenses, or counterclaims to the Prepetition Debt exist, and no portion of the Prepetition Debt is subject to avoidance, recharacterization or subordination pursuant to the Code or applicable non-bankruptcy law; and (4) Prepetition Agent's and Prepetition Lenders' claim with respect to the Prepetition Debt is for all purposes an allowed claim within the meaning of Code § 506 in an amount not less than $23,704,313, exclusive of accrued and accruing Allowable 506(b) Amounts.

(c)     Replacement Liens.    Prepetition Agent is hereby granted the Replacement Liens, for the benefit of itself and the Prepetition Lenders, as security for payment of the Prepetition Debt. The Replacement Liens: (1) are in addition to the Prepetition Liens; (2) are properly perfected, valid, and enforceable liens without any further action by Debtors or Prepetition Agent, and without the execution, filing, or recordation of any financing statements, security agreements, mortgages, or other documents or instruments; and (3) will remain in full force and effect notwithstanding any subsequent conversion or dismissal of any Case. Notwithstanding the foregoing, Debtors are authorized to, and must, execute and deliver to Prepetition Agent such financing statements, mortgages, instruments, and other documents as Prepetition Agent may request from time to time in respect of the Replacement Liens.

(d)     Allowed Code § 507(b) Claim.    If and to the extent the adequate protection of the interests of Prepetition Agent and Prepetition Lenders in the Prepetition Collateral granted pursuant to this Order proves insufficient, Prepetition Agent and Prepetition Lenders will have an allowed claim under Code § 507(b), subject to the Carveout, in the amount of any such insufficiency, with priority over:  (1) all costs and expenses of administration of the Cases (other than Postpetition Agent's and Postpetition Lenders' claims under Code § 364) that are incurred under any provision of the Code; and (2) the claims of any other party in interest under Code § 507(b).

(e)     No Disposition of Certain Claims.    As further adequate protection of the interests of Prepetition Agent and the Prepetition Lenders in the Prepetition Collateral, the Debtors shall not sell, assign, transfer, or otherwise dispose of any claims or causes of action, if

-13-

any, that any Debtor may now or hereafter have or assert against Prepetition Agent, any Prepetition Lender, or any of the respective successors, assigns, or affiliates, in each case, without the prior written consent of Prepetition Agent and the Prepetition Lenders.

5.    Termination Date; Rights and Remedies.

(a)    Effect of Termination Date.  Unless extended by the Court upon the written agreement of Postpetition Agent, upon the Termination Date without further notice or order of Court: (1) Debtors' authorization to use Cash Collateral and to incur Postpetition Debt hereunder will automatically terminate; and (2) at Postpetition Agent's election (i) the Postpetition Debt will be immediately due and payable, (ii) Debtors will be prohibited from using any Cash Collateral for any purpose other than application to the Aggregate Debt in accordance with Paragraph 2(d) of this Order, and (iii) Agents will be entitled to setoff any Cash Collateral in any Agent's or any Lender's possession or control and apply such Cash Collateral to the Aggregate Debt in accordance with Paragraph 2(d) of this Order.

(b)    Rights and Remedies.  On the fifth (5th) business day after the Termination Date, at Postpetition Agent's election without notice or further order of the Court: (1) Agents will have automatic and immediate relief from the automatic stay with respect to the Aggregate Collateral (without regard to the passage of time provided for in Fed. R. Bankr. P. 4001(a)(3)), and will be entitled to exercise all rights and remedies available to them under the Prepetition Documents, the Postpetition Documents, and applicable non-bankruptcy law; and (2) Debtors must surrender the Aggregate Collateral and otherwise cooperate with Agents and Lenders in the exercise of their rights and remedies under the Prepetition Documents, the Postpetition Documents, and applicable non-bankruptcy law, including, without limitation, by filing a motion to retain one or more agents to sell, lease, or otherwise dispose of the Aggregate Collateral upon the request of, and subject to terms and conditions acceptable to, Agents. Notwithstanding the foregoing, during the five (5) business day period following the Termination Date, Debtors, the Committee, and the United States Trustee may seek an order of this Court; provided, however, that during such five (5) business day period, Postpetition Lenders will have no obligation whatsoever to advance any Postpetition Debt to Debtors.

-14-

(c)    <u>Access to Collateral</u>.    Upon the entry of the Final Order, notwithstanding anything to the contrary herein or in any Prepetition Third Party Document or Postpetition Document, upon written notice to the landlord of any of the Debtors' leased premises that an Event of Default has occurred and is continuing, Agents may enter upon such leased premises for the purpose of exercising any right or remedy with respect to the Aggregate Collateral located thereon and will be entitled to such Debtor's rights and privileges under such lease without interference from such landlord; <u>provided</u>, that such Agent shall pay to such landlord rent first accruing after the above referenced written notice and during the period of occupancy by such Agent, calculated on a per diem basis.

6.    <u>Carveout</u>.

(a)    <u>Carveout Terms</u>. The Carveout with respect to the Debtor Carveout Professionals, collectively, the Committee Carveout Professionals, collectively, and each other Carveout Professional, individually: (1) equals an aggregate amount not to exceed the lesser of (i) the aggregate amount provided in the applicable line item in the "Professional Fee Accrual Summary" contained in the Budget for such Carveout Professionals for the period commencing on the Petition Date and ending on the Termination Date and (ii) the aggregate amount of allowed fees and expenses that accrue during the period commencing on the Petition Date and ending on the Termination Date; (2) will be reduced dollar-for-dollar by any payments of fees and expenses to such Carveout Professionals; and (3) must be paid out of any prepetition or postpetition retainer or property of the estate (other than property subject to an unavoidable lien in favor of the Prepetition Agent or the Postpetition Agent or any other creditor claiming a security interest or lien in same) before such payments are made from proceeds of the Postpetition Debt or the Aggregate Collateral.   Further, Postpetition Agent and Postpetition Lenders have, and will retain, the right from time to time to reserve against the DIP Commitment, including, without limitation, by establishing one or more Reserves (as defined in the Postpetition Loan Agreement) under the Postpetition Loan Agreement, an amount equal to the sum of the aggregate amount of unpaid fees and expenses set forth in the Budget for the Carveout Professionals. Except as set forth in this paragraph, Postpetition Agent and Postpetition Lenders will not have any obligation to fund any fees or expenses of any Carveout Professionals accrued on, prior to, or after the Termination Date.   Any surplus portion of any retainers of a

-15-

Carveout Professional after payment of allowed amounts shall be returned to the Agents for application in accordance with Paragraph 2(d) of this Order. Nothing contained herein constitutes, or may be construed as, consent to the allowance of any Carveout Professional's fees, costs, or expenses by any party and shall not affect the rights of the Debtors, Agents, the Lenders, the Committee, the United States Trustee, or any other party in interest to object to the allowance or payment of any amounts incurred or requested.

(b)    <u>Carveout Usage</u>.  No portion of the Carveout and no Postpetition Debt or Aggregate Collateral may be used to pay any fees or expenses incurred by any Person, including any Debtor, any Committee, or any Carveout Professional, in connection with claims or causes of action adverse (or which claim an interest adverse) to Agents or Lenders or their respective interests in the Aggregate Collateral, including, without limitation, (1) preventing, hindering, or delaying Agents' or any Lenders' enforcement or realization upon any of the Aggregate Collateral or the exercise of their rights and remedies under this Order, any Postpetition Document, any Prepetition Document, or applicable law, in each case, once an Event of Default has occurred, (2) using or seeking to use any Cash Collateral or incurring indebtedness in violation of the terms hereof, or selling any Aggregate Collateral without Agents' and Lenders' written consent, or (3) objecting to, or contesting in any manner, or in raising any defenses to, the validity, extent, amount, perfection, priority, or enforceability of the Aggregate Debt or any mortgages, liens, or security interests with respect thereto or any other rights or interests of Agents and Lenders, or in asserting any claims or causes of action, including, without limitation, any actions under chapter 5 of the Code, against Agents or Lenders; <u>provided</u>, <u>however</u>, that the foregoing shall not apply to costs and expenses, in an amount not to exceed $25,000, incurred by the Committee's Carveout Professionals in connection with the investigation of a potential Challenge in accordance with Paragraph 8 of this Order; <u>provided</u>, <u>further</u>, <u>however</u>, that the Carveout may be used to pay fees and expenses incurred by the Carveout Professionals in connection with the negotiation, preparation, and entry of this Order or any amendment hereto consented to by Postpetition Agent.  If, and solely to the extent that, the Committee Carveout Professionals do not use all of the Carveout funds that are allocated for the Committee Carveout Professionals in the Budget, then such unused portion of the Carveout for the Committee Carveout Professionals may be distributed to general unsecured creditors under and pursuant to a

plan of reorganization that has been confirmed by the Court and that Agents and Lenders have consented to in writing, subject to the terms of this Order, including Paragraph 11 hereof.

(c)    <u>Carveout for the Debtor Carveout Professionals</u>.    The aggregate Carveout with respect to Debtor Carveout Professionals consists of two separate Carveouts: (1) a Carveout that pertains solely to the allowed fees and expenses of Debtor Carveout Professionals incurred by Debtors on or prior to the date of the Sale Closing or the Termination Date, whichever occurs first (the "<u>Pre-Sale Debtor Carveout</u>") and (2) effective upon, and subject to, the Debtors' realization of the Specified Minimum Sale Proceeds, a Carveout that pertains solely to the allowed fees and expenses of Debtor Carveout Professionals incurred by Debtors after the date of the Sale Closing through the Termination Date (inclusive of seventy-five percent (75%) of any unused portion of the Pre-Sale Debtor Carveout, if any) (the "<u>Contingent Post-Sale Debtor Carveout</u>").    The Pre-Sale Debtor Carveout will automatically terminate on the earlier of (i) the date of the Sale Closing or (ii) the Termination Date, and no portion of the Pre-Sale Debtor Carveout, including any unused portion thereof, may be allocated for, or used to pay, reimburse, or otherwise satisfy, any fees or expenses incurred by any Debtor Carveout Professional or any other Carveout Professional after such date except as provided in subsection (2) above with respect to the Contingent Post-Sale Debtor Carveout. If Debtors do not consummate the Sale Closing, or if Debtors consummate the Sale Closing but do not realize the Specified Minimum Sale Proceeds in connection therewith, then in each case the Contingent Post-Sale Debtor Carveout is and will be null and void and of no force or effect whatsoever (whether or not any such Carveout may have been included in any Budget in effect from time to time).    The Pre-Sale Debtor Carveout and any Contingent Post-Sale Debtor Carveout each constitute a "Carveout" hereunder and are subject to the terms of this Order, including, without limitation, Paragraph 6. Debtors shall maintain a separate line item in the Budget for the Pre-Sale Debtor Carveout and any Contingent Post-Sale Debtor Carveout.

(d)    <u>Unused Carveout for the Debtor Carveout Professionals</u>.    Effective upon, and subject to, (i) consummation of the Sale Closing and (ii) Debtors' realization of $23,500,000 or more of Net Cash Proceeds (as defined in Section 3(g) hereof), and subject to the terms of this Order, if and to the extent there exists any unused portion, if any, of (y) the Pre-Sale Debtor Carveout determined as of the date of the Sale Closing (such unused portion, if any,

-17-

"Unused Pre-Sale Debtor Carveout") and (z) the Contingent Post-Sale Debtor Carveout determined as of the sixtieth (60th) day after the date of the Sale Closing (such unused portion, if any, "Unused Contingent Post-Sale Debtor Carveout"; together with any Unused Pre-Sale Debtor Carveout, the "Unused Debtor Carveout"), then Debtors will be entitled to use up to, but not more than, fifty percent (50%) of such Unused Debtor Carveout to pay accrued and unpaid administrative claims and expenses arising in Debtors' cases until the earlier of (I) the effective date of any plan that is confirmed in any Case or (II) the date on which any Case is first dismissed or converted to a case under chapter 7 of the Code, subject in each case to the following limitations: (1) the payment of any such claim would in all events be a condition precedent to the confirmation of any plan under the Code in the Debtors' Cases and (2) such claim is not a claim for the payment, reimbursement, or satisfaction of any fees, expenses, or other charges that are, or may be asserted as, owing to any Carveout Professional or any other professional retained, engaged or employed by any Debtor, the Committee, or any other Person (whether under Code Sections 327, 1103, or otherwise). If Debtors do not consummate the Sale Closing, or if Debtors consummate the Sale Closing but do not realize $23,500,000 or more of Net Cash Proceeds, then in each case the terms of this Paragraph 6(d) are and will be null and void and of no force or effect whatsoever.

(e)    Carveout Procedure. Debtors must, upon request of Postpetition Agent, provide to Postpetition Agent a written report ("Carveout Report"), in which Debtors disclose their then current estimate of (1) the aggregate amount of unpaid professional fees, costs, and expenses accrued or incurred by the Carveout Professionals through the date of the Carveout Report, and (2) the projected fees, costs, and expenses of the Carveout Professionals for the thirty (30) day period following the date of such Carveout Report. Nothing herein may be construed as consent by Agents or Lenders to the allowance of any fees, costs, or expenses of the Carveout Professionals or will affect the right of Agents or any Lender to object to the allowance and payment of any such fees, costs, or expenses, or the right of Agents or any Lender to the return of any portion of the Carveout that is funded with respect to fees, costs, and expenses for a Carveout Professional that are approved on an interim basis, but that are later denied on a final basis. No Carveout Professional will be entitled to any portion of the Carveout allocated for any other Carveout Professional in the Budget.

-18-

7.      No Surcharge. Debtors represent that the Budget contains all expenses that are reasonable and necessary for the operation of Debtors' businesses and the preservation of the Aggregate Collateral through the period for which the Budget runs, and therefore includes any and all items potentially chargeable to Agents and Lenders under Code § 506(c). Therefore, in the exercise of their business judgment, subject to entry of the Final Order, Debtors agree that there will be no surcharge of the Aggregate Collateral for any purpose unless agreed to in writing by Agents and Lenders, and effective upon entry of the Final Order, each Debtor, on behalf of its estate, will be deemed to have waived any and all rights, benefits, or causes of action under Code § 506(c), the enhancement of collateral provisions of Code § 552, or any other legal or equitable doctrine (including, without limitation, unjust enrichment) as they may relate to, or be asserted against, Agents, Lenders, or any Aggregate Collateral. In reliance on the foregoing, Agents and Lenders have agreed to the entry of this Order.

8.      Reservation of Rights; Bar of Challenges and Claims. The stipulations and representations contained in this Order, including, without limitation, in Paragraph D, will be binding on all Challenge Parties, unless, and solely to the extent that, (i) a Challenge Party timely commences a Challenge during the Investigation Period and (ii) the Court rules in favor of the plaintiff in any such timely and properly filed Challenge.

(a)      Bar of Challenges and Claims. If no Challenge is timely asserted during the Investigation Period, or a timely-asserted Challenge is not successful, without further order of the Court, (1) the claims, liens, and security interests of Prepetition Agent and Prepetition Lenders will be deemed to be allowed for all purposes in the Cases and will not be subject to any challenge whatsoever by any party in interest as to extent, validity, priority, or otherwise, and (2) Debtors and their respective estates will be deemed to have waived, released, and discharged Prepetition Agent, Prepetition Lenders, and each of their respective affiliates, shareholders, subsidiaries, divisions, agents, officers, directors, members, managers, employees, representatives, attorneys, advisors, principals, consultants, predecessors in interest, successors, and assigns of and from any and all claims and causes of action, indebtedness, and obligations, of every type and nature whatsoever, that occurred on or prior to the date of entry of this Order with respect to, or in connection with, the Prepetition Debt, the Prepetition Liens, or the Prepetition Documents.

-19-

9.    <u>Sale Covenants</u>. To effectuate the sale process for all, or substantially all, of Debtors' assets, Debtors have agreed to, and are authorized to, satisfy each of the following sale covenants and any other sale covenants set forth in Sections 6.10 and 6.11 of the Postpetition Loan Agreement:

(a)    <u>Bidding Procedures</u>. On or before June 2, 2016 (or such later date as Agents may agree to in writing in their discretion), Debtors shall have obtained entry of one or more Court orders approving the procedures for the sale of all, or substantially all, of Debtors' assets, in form and substance satisfactory to Agents (the "<u>Bidding Procedures Order</u>").

(b)    <u>Auction</u>. On or before July 7, 2016 (or such later date as Agents may agree to in writing in their discretion), Debtors shall have conducted one or more auctions for the sale of all, or substantially all, of Debtors' assets in accordance with the Bidding Procedures Order (each, an "<u>Auction</u>").

(c)    <u>Sale Order</u>. On or before July 18, 2016 (or such later date as Agents may agree to in writing in their discretion), Debtors shall have obtained entry of one or more orders of the Court approving the sale of all, or substantially all, of Debtors' assets, in form and substance satisfactory to Agents, pursuant to one or more purchase agreements (collectively, the "<u>Purchase Agreements</u>"), in form and substance satisfactory to Agents.

(d)    <u>Closing</u>. On or before August 1, 2016 (or such later date as Agents may agree to in writing in their discretion), Debtors shall have consummated one or more sales of all, or substantially all, of Debtors' assets, on terms and conditions satisfactory to Agents in their discretion, and remitted all of the proceeds thereof (net only of such fees, expenses, charges, or other amounts that may be expressly agreed to, in writing, by Agents and Lenders) to Postpetition Agent for application in accordance with Paragraph 2(d) of this Order (the consummation of the last of such sales in accordance with the terms and conditions of this Order is herein referred to as the "<u>Sale Closing</u>"). Debtors and Agents will use good faith efforts to determine if Debtors realized the Specified Minimum Cash Proceeds in connection with the Sale Closing within ten (10) days after the date of the Sale Closing, but in all events after all of the purchase price and similar closing adjustments have been made and finally determined under all of the Purchase Agreements.

Debtors, Agents, and Lenders may agree to amend or modify the foregoing sale covenants, in writing, without the need of any further notice, hearing, or order of this Court (other than a notice of such amendment or modification to be filed with this Court).

10.     Right to Credit Bid.  In connection with the sale or other disposition of all or any portion of the Aggregate Collateral, whether under Code § 363, Code § 1129 or otherwise, pursuant and subject to Code § 363(k), (a) Postpetition Agent will have the right to use the amounts then outstanding under the Postpetition Debt or any part thereof to credit bid with respect to any bulk or piecemeal sale of all or any portion of the Aggregate Collateral and (b) Prepetition Agent will have the right to use the amounts then outstanding under the Prepetition Debt or any part thereof to credit bid with respect to any bulk or piecemeal sale of all or any portion of the Aggregate Collateral.  With respect to any such sale or disposition, and any process relating thereto, each Agent on behalf of Lenders (and their respective designees) is, and will be deemed to be, a qualified bidder for all purposes under any sale and bidding procedures (including any such procedures approved by any Bidding Procedures Order), and under any order approving any bidding and sale procedures (including any Bidding Procedures Order), and may attend and participate at any auction (including any Auction) and sale hearing, in each case, without regard to any of the requirements or conditions set forth therein and without any other or further action by such Agent or designee.

11.     Plan.  Unless Agents consent in writing, prior to the consummation of the Sale Closing Debtors will not seek entry of an order confirming a plan in any Case unless the Aggregate Debt shall be indefeasibly paid in full in cash on the earlier of (a) the effective date of such plan or (b) the Termination Date, notwithstanding anything to the contrary in any such order confirming a plan.  In addition to, and without limiting, the foregoing, if any Agent on behalf of any Lender makes any funds available to Debtors at any time pursuant to the terms of this Order for purposes of funding the negotiation, preparation, or confirmation of any plan of reorganization (including, without limitation, pursuant to Paragraphs 3(g) and 6 hereof), then such Agent will be entitled to a Postpetition Lien on the Postpetition Collateral (including, without limitation, all claims and causes of action of Debtors under chapter 5 of the Code) to secure the repayment in full in cash of such amounts pursuant to the terms any such plan of reorganization.

12.     Application of Sale Proceeds. All proceeds from sales or other dispositions of all or any portion of the Aggregate Collateral other than in the ordinary course of the Debtors' businesses will be remitted to Agents for application subject to Paragraph 2(d) of this Order.

-21-

13.    <u>Waiver of Right to Return/Consent to Setoff</u>.  Without the prior written consent of Agents and Lenders, Debtors will not agree or consent to any of the following: (a) to return any Aggregate Collateral pursuant to Code § 546(h); (b) to consent to any order permitting or allowing any claims pursuant to Code § 503(b)(9); or (c) to consent to setoff pursuant to Code § 553.

14.    <u>Indemnification</u>.  Debtors will indemnify and hold harmless Prepetition Agent and Prepetition Lenders, and Postpetition Agent and Postpetition Lenders, in accordance with the terms of the Prepetition Documents and the Postpetition Documents, respectively.

15.    <u>No Marshaling</u>.  Upon entry of the Final Order, none of the Agents, Lenders, or any of the Aggregate Collateral will be subject to the doctrine of marshaling.

16.    <u>Postpetition Charges</u>.  All Postpetition Charges must be promptly paid by Debtors in accordance with this Order and the Postpetition Documents, without need for filing any application with the Court for approval or payment thereof, within ten (10) business days of Postpetition Agent's written notice to Debtors, any Committee, and the United States Trustee.

17.    <u>Force and Effect of Prepetition Documents</u>.  Except as modified herein, and subject to the other provisions of this Order (including Paragraph 8 hereof) and the Code, the Prepetition Documents will remain in full force and effect with respect to the Prepetition Debt. To the extent that there exists any conflict among the terms of the Motion, the Prepetition Documents and this Order, this Order governs and controls. Without limiting the foregoing, the Subordination Agreements are and will remain valid and binding upon each of the parties thereto notwithstanding the entry of this Order, constitute "subordination agreements" within the meaning of Code § 510, are enforceable in accordance with their respective terms, and Agents' and Lenders' consent to the entry of this Order will not prejudice any rights of Agents or Lenders under any Subordination Agreement.

18.    <u>Modification of Stay</u>.  The automatic stay of Code § 362 is hereby modified with respect to Agents and Lenders to the extent necessary to effectuate the provisions of this Order, including, without limitation, after the Termination Date to permit Agents and Lenders to exercise their respective rights contemplated by Paragraph 5 above.

-22-

19.    <u>No Waiver</u>. None of the Agents or the Lenders will be deemed to have suspended or waived any of their rights or remedies under this Order, the Prepetition Documents, the Postpetition Documents, the Code, or applicable non-bankruptcy law unless such suspension or waiver is hereafter made in writing, signed by a duly authorized officer of Agents or Lenders, as applicable, and directed to Debtors. No failure of any Agent or any Lender to require strict performance by any Debtor (or by any Trustee) of any provision of this Order will waive, affect, or diminish any right of Agents or Lenders thereafter to demand strict compliance and performance therewith, and no delay on the part of Agents or Lenders in the exercise of any right or remedy under this Order, the Prepetition Documents, the Postpetition Documents, the Code, or applicable non-bankruptcy law will preclude the exercise of any right or remedy. Further, this Order does not constitute a waiver by Prepetition Agent or the Prepetition Lenders of any of their rights under the Prepetition Documents, the Code, or applicable non-bankruptcy law, including, without limitation, their right to later assert: (a) that any of their interests in the Aggregate Collateral lack adequate protection within the meaning of Code §§ 362(d) or 363(e) or any other provision thereof or (b) a claim under Code § 507(b).

20.    <u>"Responsible Person"</u>. By taking any actions pursuant to this Order, Postpetition Agent and Postpetition Lenders will not be deemed to be (a) in control of the operations or liquidation of any Debtor or (b) acting as a "responsible person" with respect to the operation, management, sale, or liquidation of any Debtor.

21.    <u>Release</u>. Upon the date that the Postpetition Debt is paid in full in cash and prior to the release of the Postpetition Liens, each Debtor, on behalf of its estate and itself, must execute and deliver to Postpetition Agent and Postpetition Lenders, and each of their respective successors and assigns, and their present and former shareholders, affiliates, subsidiaries, divisions, predecessors, members, managers, directors, officers, attorneys, employees, agents, advisors, principals, consultants, and other representatives (the "<u>Releasees</u>"), a general release of and from any and all claims, demands, liabilities, responsibilities, disputes, remedies, causes of action, indebtedness, and obligations, of every kind, nature, and description, including, without limitation, any so-called "lender liability" claims or defenses, that Debtors (or any of them) had, have, or hereafter can or may have against Releasees as of the date hereof, whether known or

-23-

unknown, foreseen or unforeseen, existing or hereafter arising, in law, equity, or otherwise, in respect of events that occurred on or prior to the date the Postpetition Debt is paid in full.

22.    Amendments.  Debtors, Postpetition Agent, and Postpetition Lenders may enter into amendments or modifications of the Postpetition Documents or the Budget without any further notice, hearing, or order of this Court; provided, however, that (a) such modifications or amendments do not materially and adversely affect the rights of any creditor or other party-in-interest and (b) notice of any such amendment or modification is filed with this Court and provided to the Committee and the United States Trustee.

23.    Proof of Claim.  Neither Prepetition Agent nor any Prepetition Lender are required to file a proof of claim with respect to any of the Prepetition Debt and the stipulations and findings set forth in this Order constitute an informal proof of claim in respect thereof.

24.    Binding Effect.  Except as provided in Paragraph 8 herein, this Order is binding on all parties in interest in the Cases and their respective successors and assigns, including, without limitation, any Trustee, except that any Trustee will have the right to terminate this Order after notice and a hearing, subject to the terms and conditions of this Order.  If, in accordance with Code § 364(e), this Order does not become a final nonappealable order, if a Trustee terminates this Order, or if any of the provisions of this Order are hereafter modified, amended, vacated, or stayed by any subsequent order of this Court or any other court, such termination or subsequent order will not affect: (a) subject to Paragraph 8 of this Order, any of the agreements, stipulations, representations, or findings contained in this Order, or any of the relief granted by, or any of the releases contained in, this Order; and (b) the priority, validity, enforceability, or effectiveness of any lien, security interest, or other benefit or claim authorized hereby with respect to Cash Collateral remitted (subject to Paragraph 8 of this Order), or Postpetition Debt incurred, prior to the effective date of such termination or subsequent order. All such liens, security interests, claims, and other benefits will be governed in all respects by the original provisions of this Order, and Postpetition Agent and Postpetition Lenders will be entitled to all of the rights, remedies, privileges, and benefits granted herein, including, without limitation, the liens and priorities granted herein with respect to the Postpetition Debt. Except as

-24-

otherwise explicitly set forth in this Order, no third party is intended to be, or may be deemed to be, a third party beneficiary of this Order.

25.    <u>Survival</u>.  The provisions of this Order, and any actions taken pursuant to or in reliance upon the terms hereof, will survive entry of, and govern in the event of any conflict with, any order that may be entered in the Cases: (a) confirming any chapter 11 plan, (b) converting any Case to a case under chapter 7 of the Code, (c) dismissing any Case, (d) withdrawing of the reference of any Case from this Court, or (e) providing for abstention from handling or retaining of jurisdiction of any of the Cases in this Court. The terms and provisions of this Order, including, without limitation, the rights granted to Postpetition Agent and Postpetition Lenders under Code §§ 364(c) and (d), will continue in full force and effect until all of the Aggregate Debt is indefeasibly paid in full in cash and discharged.

26.    <u>Notice of Final Hearing</u>.  The Final Hearing is scheduled for June 7, 2016 at 1:00 p.m., and may be continued from time to time without further notice other than that given in open court.  Debtors are directed to immediately serve a copy of this Order by first class mail, postage prepaid, on counsel for Agents, any Persons that have asserted a lien or other interest in any of Debtors' assets, Debtors' thirty (30) largest unsecured creditors, all taxing authorities that have, or whom the Debtors believe may, assert claims against the Debtors or any of the Debtors' assets, and the United States Trustee, which service will constitute adequate and proper notice of the Final Hearing.  Any objection to the Order must be filed with the Court and received by counsel for the Debtors, Agents, and the United States Trustee no later than five (5) business days prior to the commencement of the Final Hearing.  Any timely and properly filed and served objection will be heard at the Final Hearing.

The Honorable Brendan L. Shannon
United States Bankruptcy Judge

Dated: May 2 3 , 2016