## EXHIBIT 1

## DEFINED TERMS

1. ***Aggregate Collateral.*** Collectively, the Prepetition Collateral and the Postpetition Collateral.

2. ***Aggregate Debt.*** Collectively, the Prepetition Debt and the Postpetition Debt.

3. ***Allowable 506(b) Amounts.*** To the extent allowable under Code § 506(b), interest at the default rate of interest as set forth in the proviso of Section 2.7.1 of the Credit Agreement, all fees, costs, expenses, and other charges due or coming due under the Prepetition Documents or in connection with the Prepetition Debt (regardless of whether such interest, fees, costs, expenses, and other charges are included in the Budget), and all costs and expenses at any time incurred by Prepetition Agent and Prepetition Lenders in connection with: (a) the negotiation, preparation, and submission of this Order and any other order or document related hereto, and (b) the representation of Prepetition Agents and Prepetition Lenders in the Cases, including, without limitation, in defending any Challenge.

4. ***Blocked Account.*** Deposit account number ending –3719 maintained by Phoenix Brands at Regions Bank or such other deposit account that Agents may agree to in writing.

5. ***Budget.*** The budget attached to this Order as Exhibit 2, as amended, supplemented, or otherwise modified from time to time with the prior written consent of Agents.

6. ***Carveout.*** Collectively, (a) all fees required to be paid to the Office of the United States Trustee pursuant to 28 U.S.C. § 1930(a), and (b) with respect to each Carveout Professional, the allowed fees and disbursements of such Carveout Professional from time to time pursuant to Code § 330, in the aggregate amount set forth in Paragraph 6 of this Order and subject to the terms of this Order, including, without limitation, Paragraph 6 hereof. "Carveout" includes the Pre-Sale Debtor Carveout and the Contingent Post-Sale Debtor Carveout, if any.

7. ***Carveout Professionals.*** Morrison Cohen LLP, as counsel for Debtors, Pachulski Stang Ziehl & Jones LLP, as local counsel for Debtors, Osler Hoskin & Harcourt, as local Canadian counsel for Debtors, Getzler Henrich & Associates LLC, as financial advisor for Debtors, Peter Furman of HunterPoint LLC, as chief restructuring officer of Phoenix Brands, Houlihan Lokey, as investment banker for Debtors, such individual professionals that are authorized by the Court to be retained by any Committee, Rust Consulting/Omni Bankruptcy, as claims and noticing agent in these Cases, and the United States Trustee. Each of the foregoing, a "Carveout Professional" and, collectively, "Carveout Professionals".

8. ***Cases.*** The chapter 11 cases or any superseding chapter 7 cases of Debtors.

9. ***Cash Collateral.*** All "cash collateral", as that term is defined in Code § 363(a), in which Agents (on behalf of Lenders) have an interest, all deposits subject to setoff rights in favor of Agents and Lenders, and all cash arising from the collection or other conversion

to cash of all or any portion of the Aggregate Collateral, including, without limitation, from the sale or other disposition of inventory and the collection of accounts receivable.

10. ***Challenge***. A claim or cause of action challenging the extent, validity, perfection, priority, or enforceability of the Prepetition Debt, the Prepetition Liens, or any other claims or causes of action against Prepetition Agent and Prepetition Lenders, which Debtors, the Committee, or another party-in-interest may bring, in accordance with Paragraph 8 of this Order.

11. ***Challenge Party***. Any Committee, any Trustee, or other party-in-interest with the requisite standing.

12. ***Code***. The United States Bankruptcy Code (11 U.S.C. § 101 *et seq.*), as amended, and any successor statute. Unless otherwise indicated, all statutory section references in this Order are to the Code.

13. ***Committee***. Any official creditors' committee appointed to represent unsecured creditors in the Cases pursuant to Code § 1102.

14. ***Committee Carveout Professionals***. Such professionals that are authorized by the Court to be retained by any Committee. Each a "Committee Carveout Professional" and, collectively, "Committee Carveout Professionals".

15. ***Control Agreements***. Collectively, (a) that certain Deposit Account Control Agreement dated as of March 24, 2011, by and among Regions Bank, Prepetition Agent, and Phoenix Brands, (b) that certain Special Deposit Agreement dated as of April 6, 2011, by and among The Royal Bank of Scotland N.V., (Canada Branch), Prepetition Agent, and Phoenix Brands Canada U.L.C., and (c) any other deposit account control agreement or similar agreement relating to the Prepetition Debt made by or in favor of Prepetition Agent or Prepetition Lenders from time to time, in each case, as amended or otherwise modified from time to time.

16. ***Credit Agreement***. That certain Credit Agreement dated as of February 1, 2011, by and among Prepetition Agent, the Prepetition Lenders party thereto from time to time, and Phoenix Brands, as amended or otherwise modified from time to time.

17. ***Debtor Carveout Professionals***. Collectively, Morrison Cohen LLP, as counsel for Debtors, Pachulski Stang Ziehl & Jones LLP, as local counsel for Debtors, Osler Hoskin & Harcourt, as local Canadian counsel for Debtors, Getzler Henrich & Associates LLC, as financial advisor for Debtors, and Peter Furman of HunterPoint LLC, as chief restructuring officer of Phoenix Brands. Each of the foregoing, a "Debtor Carveout Professional" and, collectively, "Debtor Carveout Professionals".

18. ***DIP Commitment***. As of any date of determination, (a) $2,000,000 plus (b) an amount equal to the aggregate amount of (i) all Cash Collateral that has been applied to the Prepetition Debt in accordance with subsections (1) and (2) of Paragraph 2(d) of this Order as of such date plus (ii) the amount of the Prepetition Debt that is refinanced upon entry of the Final Order as set forth in Paragraph 3(c) of this Order.

19. ***Event of Default.*** At Postpetition Agent's election, the occurrence of any of the following: (a) the occurrence and continuance of any "Event of Default" (as defined in the Postpetition Loan Agreement) first arising after the Petition Date under the Postpetition Loan Agreement or any other Postpetition Document; (b) Debtors fail to timely comply with the covenants or perform any of their obligations in strict accordance with the terms of this Order; (c) Debtors fail to comply with any Sale Covenant; (d) Debtors, without the consent of Agents and Lenders, use, or seek the use of, Cash Collateral other than in accordance with the terms of this Order; (e) Debtors, without the written consent of Agents and Lenders, file a motion to incur debt secured by a lien with priority equal to, or superior to, the Prepetition Liens or the Postpetition Liens or which is given superpriority administrative expense status under Code § 364(c) other than in accordance with the terms of this Order; (f) at any time prior to the consummation of the Sale Closing, Peter Furman is no longer the chief restructuring officer of Phoenix Brands for any reason (a "CRO Event") and Phoenix Brands has not appointed a replacement chief restructuring officer acceptable to Postpetition Agent within three (3) business days after such CRO Event; (g) Debtors file a motion to conduct a Code § 363 sale of all or any part of the Aggregate Collateral on terms unacceptable to Agents and Lenders; (h) any Debtor or other Person files a chapter 11 plan that is not acceptable to Agents and Lenders; (i) entry of any order authorizing any party in interest to reclaim any of the Aggregate Collateral, granting any party in interest relief from the automatic stay with respect to the Aggregate Collateral, or requiring that any Debtor turnover any of the Aggregate Collateral, in each case prior to the full, final, and indefeasible repayment of all of the Aggregate Debt; (j) entry of any order requiring any Debtor to pay (prior to full, final, and indefeasible repayment of all Aggregate Debt) any amounts in respect of claims under Code § 503(b)(9) or otherwise on account of goods shipped to any Debtor prior to the Petition Date; (k) any material representation or warranty made by any Debtor in any certificate, report, or financial statement delivered to any Agent or to any Lender proves to have been false or misleading in any material respect as of the time when made or given (including by omission of material information necessary to make such representation, warranty, or statement not misleading); (l) any Debtor files a motion in any Case to dismiss any Case or to convert any Case to a case under chapter 7 of the Code; (m) any Case is dismissed or converted to a case under chapter 7 of the Code; (n) a Trustee is appointed or elected in any Case, or an examiner with the power to operate any of the Debtor's business is appointed in any Case; (o) commencement of any adversary proceeding or contested matter objecting to the extent, validity, or priority of all or any portion of the Prepetition Debt or the Prepetition Liens; (p) any Debtor's exclusivity period under Code § 1121 is terminated or shortened for any reason whatsoever; (q) at any time prior to the consummation of the Sale Closing, Houlihan Lokey ceases to be investment banker for Debtors at any time and for any reason whatsoever; (r) any payment is made by Debtors, or any adequate protection is granted by Debtors, with respect to any indebtedness of Debtors other than as provided in this Order or otherwise consented to in writing by Agents and approved by the Court; (s) Debtors fail at any time to pay all accrued administrative expenses and other obligations when due in accordance with, and subject to, the Budget and the Postpetition Documents; (t) this Order is modified, amended, reversed, vacated, or stayed in any manner not consented to in writing by Agents; or (u) the Final Order is not entered within twenty one (21) days following the entry of this Order in form and substance satisfactory to Agents.

20. ***Final Hearing.*** The final hearing on the Motion conducted in accordance with Fed. R. Bankr. P. 4001.

21.   *Final Order*. A final order authorizing Debtors to use Cash Collateral and incur Postpetition Debt entered at, or in connection with, the Final Hearing.

22.   *Holdings*. Phoenix Brands Parent LLC, a Delaware limited liability company.

23.   *Investigation Period*. The period from the Petition Date until the date that is the earlier of (a) seventy-five (75) days after the Petition Date, or (b) sixty (60) days after the date that a Committee is formed, if any; provided that, such period will be extended with respect to any Trustee appointed in these cases to the extent that such appointment occurs prior to the expiry of such period until the later of the expiry of such period and thirty (30) days from the date such Trustee is appointed.

24.   *Permitted Priority Liens*. Collectively, (a) the Carveout, and (b) liens in favor of third parties upon the Prepetition Collateral, which third-party liens, as of the Petition Date: (1) had priority under applicable law over the Prepetition Liens, (2) were not subordinated by agreement or applicable law, and (3) were non-avoidable, valid, properly perfected, and enforceable as of the Petition Date (or were perfected subsequent to the Petition Date pursuant to, and in accordance, the Code).

25.   *Permitted Variance*. With respect to each applicable Budget period:

(a) For the two-week Budget period ending June 1, 2016, (i) an aggregate permitted negative variance with respect to all weekly "Outflows" (as set forth in the Budget) of Debtors as set forth in the Budget equal to $600,000, measured on a trailing two-week basis, and (ii) an aggregate permitted negative variance with respect to all weekly "Inflows" (as set forth in the Budget) of Debtors as set forth in the Budget equal to $600,000, measured on a trailing two-week basis.

(b) For the three-week Budget period ending June 8, 2016, (i) an aggregate permitted negative variance with respect to all weekly "Outflows" (as set forth in the Budget) of Debtors as set forth in the Budget equal to $500,000, measured on a trailing three-week basis, and (ii) an aggregate permitted negative variance with respect to all weekly "Inflows" (as set forth in the Budget) of Debtors as set forth in the Budget equal to $500,000, measured on a trailing three-week basis.

(c) For the four-week Budget period ending June 15, 2016 and for each week in the Budget thereafter, (i) an aggregate permitted negative variance with respect to all weekly "Outflows" (as set forth in the Budget) of Debtors as set forth in the Budget equal to the lesser of fifteen percent (15%) and $400,000, measured on a trailing four-week basis and (ii) an aggregate permitted negative variance with respect to all weekly "Inflows" (as set forth in the Budget) of Debtors as set forth in the Budget equal to the lesser of fifteen percent (15%) and $400,000, measured on a trailing four-week basis.

26.   *Person*. Any individual, partnership, limited liability company, corporation, trust, joint venture, joint stock company, association, unincorporated organization, government or agency or political subdivision thereof, or any other entity whatsoever.

27. **Petition Date.** May 18, 2016.

28. **Phoenix Brands.** Phoenix Brands LLC, a Delaware limited liability company.

29. **Postpetition Charges.** Interest at the applicable rate of interest under the Postpetition Loan Agreement and all fees, costs, expenses, and other charges provided for in the Postpetition Loan Agreement, including, without limitation, those incurred by Postpetition Agent and Postpetition Lenders at any time in connection with the documentation, negotiation, administration, and enforcement of the Postpetition Debt (regardless of whether any such fees, costs, expenses, interest, and other charges are included in the Budget).

30. **Postpetition Collateral.** All of the real property and personal property of the Debtors of any description whatsoever, wherever located, and whenever arising or acquired, including, without limitation, any and all accounts, books, cash (including, without limitation, Cash Collateral, cash deposits, and all cash proceeds held in escrow), cash equivalents, chattel paper, commercial tort claims, deposits, deposit accounts, equipment, fixtures, goods, general intangibles (including, without limitation, effective upon entry of the Final Order, all claims and causes of action under chapter 5 of the Code, including, without limitation, Code §§ 542, 544, 545, 547, 548, 549, 550, 551, and 553, and all proceeds thereof), inventory, investment property, leasehold interests, negotiable collateral, supporting obligations, all of the other "Collateral" (as defined in the Postpetition Loan Agreement) and all proceeds, rents, issues, profits, and products, whether tangible or intangible, of any of the foregoing, including, without limitation, any proceeds of insurance covering any of the foregoing.

31. **Postpetition Debt.** All indebtedness or obligations of Debtors to Postpetition Agent and Postpetition Lenders incurred on or after the Petition Date pursuant to this Order or otherwise, including, without limitation, all "Obligations" (as defined in the Postpetition Loan Agreement), "Secured Obligations" (as defined in the Guarantee and Collateral Agreement (as defined in the Postpetition Loan Agreement)), and any advances made by Postpetition Agent or Postpetition Lenders to pay all or any portion of the Carveout.

32. **Postpetition Documents.** The Postpetition Loan Agreement and all of the other "Loan Documents" (as that term is defined in the Postpetition Loan Agreement).

33. **Postpetition Liens.** Priority Liens in the Aggregate Collateral, subject only to Permitted Priority Liens.

34. **Postpetition Loan Agreement.** That certain Debtor-in-Possession Credit Agreement dated as of May 24, 2016, by and among Phoenix Brands, Postpetition Agent, and Postpetition Lenders party thereto, as amended, modified, supplemented, replaced, or refinanced from time to time in accordance with the terms thereof.

35. **Prepetition Collateral.** Collectively, all of the "Collateral" (as that term is defined in the Credit Agreement) existing as of the Petition Date, and all proceeds, rents, issues, profits, and products thereof.

36. ***Prepetition Debt***. (a) All indebtedness or obligations under the Prepetition Documents as of the Petition Date, including, without limitation, all "Obligations" (as defined in the Credit Agreement), and all fees, costs, interest, expenses, and other charges as and when due and payable pursuant to the Prepetition Documents, plus (b) all Allowable 506(b) Amounts.

37. ***Prepetition Documents***. The Credit Agreement and all of the other "Loan Documents" (as that term is defined in the Credit Agreement).

38. ***Prepetition Liens***. Prepetition Agent's (on behalf of itself and Prepetition Lenders) asserted security interests in, and liens on, the Prepetition Collateral under the Prepetition Documents, subject only to Permitted Priority Liens.

39. ***Prepetition Third Party Documents***. Collectively, any deposit account control agreements, leases, licenses, landlord agreements, warehouse agreements, processor agreements, bailment agreements, insurance policies, contracts, or other similar agreements or documents of any Debtor in which Prepetition Agent or any Prepetition Lender has an interest, including, without limitation, (a) that certain Agreement, Waiver and Consent dated as of March 24, 2011, by and among Menlo Logistics, Inc. (d/b/a Menlo Worldwide Logistics), a Delaware corporation, Prepetition Agent, and Phoenix Brands, (b) that certain Processor Agreement dated as of April 6, 2011, by and among Marietta Corporation, a New York corporation, Prepetition Agent, and Phoenix Brands, (c) that certain Collateral Access Agreement dated as of March 24, 2011, by and among Epstein Becker & Green, P.C., a New York professional corporation, Prepetition Agent, and Phoenix Brands and (d) the Control Agreements, in each case, as amended or otherwise modified from time to time.

40. ***Priority Liens***. Liens which are first priority, properly perfected, valid, and enforceable security interests, which are not subject to any claims, counterclaims, defenses, setoff, recoupment, or deduction, and which are otherwise unavoidable and not subject to recharacterization or subordination pursuant to any provision of the Code, any agreement, or applicable non-bankruptcy law.

41. ***Purchase Agreement(s)***. As such term is defined in subsection (c) of Paragraph 9 of this Order.

42. ***Replacement Liens***. Priority Liens in the Postpetition Collateral granted to Prepetition Agent (for the benefit of itself and the Prepetition Lenders) pursuant to this Order, subject only to the Postpetition Liens and the Permitted Priority Liens.

43. ***Sale Closing***. As such term is defined in subsection (d) of Paragraph 9 of this Order.

44. ***Sale Covenants***. The covenants set forth in Paragraph 9 of this Order and any other sale covenants set forth in Sections 6.10 and 6.11 of the Postpetition Loan Agreement.

45. ***Specified Exclusions***. Collectively, any and all (i) accrued and unpaid Carveout obligations as of the date of determination, whether or not allowed as of such date, (ii) accrued and unpaid administrative claims and expenses of any kind arising or asserted in the Debtors' Cases as of the date of determination that are required to be paid under the terms of this

Order, (iii) adjustments or other modifications of any kind to the purchase price or the net cash proceeds under each Purchase Agreement, including, without limitation, any working capital or similar closing adjustments, and (iv) any amounts that Postpetition Agent or the Postpetition Lenders may have advanced under Paragraph 3(h) in respect of Budgeted TSA Costs (as defined in Paragraph 3(h)) as of the date of determination (the foregoing exclusions set forth in this subsection (b), collectively, the "Specified Exclusions").

46. **Specified Minimum Sale Proceeds.** Collectively, cash proceeds arising out of, and realized by Debtors in connection with, the timely consummation of the Sale Closing in accordance with the terms of this Order and the Postpetition Documents in an amount that is greater than or equal to nineteen million dollars ($19,000,000) after deducting any purchase price adjustments and holdbacks that may be required under and pursuant to the Purchase Agreements, and are not inclusive of any amounts paid to either (a) Houlihan Lokey as a transaction fee for the Sale Closing or (b) amounts paid to employees under any employee incentive and severance program that is or was consented to by Prepetition Agent and Prepetition Lenders.

47. **Subordination Agreements.** Collectively, (a) that certain Subordination and Intercreditor Agreement dated as of February 1, 2011, by and among Fifth Street Finance Corp., a Delaware corporation, as Subordinated Creditor, Prepetition Agent, Phoenix Brands, Holdings, and the subsidiaries of Phoenix Brands from time to time party thereto, (b) that certain Subordination and Intercreditor Agreement dated as of February 1, 2011, by and among Lehman Phoenix SPV LLC, a Delaware limited liability company, as Subordinated Creditor, Prepetition Agent, Phoenix Brands, Holdings, and the subsidiaries of Phoenix Brands from time to time party thereto, and (c) any other subordination agreement, intercreditor agreement, or other similar agreement relating to the Prepetition Debt made by or in favor of Prepetition Agent or Prepetition Lenders from time to time, in each case, as amended or otherwise modified from time to time.

48. **Termination Date.** At Postpetition Agent's election, the earliest to occur of: (a) the date on which Postpetition Agent provides, via facsimile, electronic mail, or overnight mail, written notice to counsel for Debtors, counsel for any Committee, and the United States Trustee of the occurrence and continuance of an Event of Default; (b) the date that is twenty-one (21) days following the entry of this Order if the Final Order is not entered in form and substance satisfactory to Agents and Lenders by such date; (c) the date of the Final Hearing, if this Order is modified at the Final Hearing in a manner unacceptable to Agents and Lenders; (d) sixty (60) days after the date of the Sale Closing; (e) the date on which the Aggregate Debt is indefeasibly paid in full in cash; and (f) September 14, 2016.

49. **Transition Services Agreements.** Collectively, the transition services agreements entered into by Debtors in connection with the Sale Closing, in each case, in form and substance satisfactory to Agents.

50. **Trustee.** Any trustee appointed or elected in the Cases.